[Crim. No. 1609.   In Bank.—June 28, 1911.]

## In the Matter of the Petition of B. BURKE for a Writ of Habeas Corpus.

CRIMINAL LAW—SELLING LIQUOR NEAR UNIVERSITY GROUNDS—CONSTITU
    TIONAL LAW—SPECIAL LEGISLATION—UNIFORM OPERATION.—Section
    172a of the Penal Code, providing that "every person who, upon or
    within one and one-half miles of the university grounds or campus,
    upon which are located the principal administrative offices of any
    university having an enrollment of more than one thousand students,
    more than five hundred of whom reside or lodge upon such university grounds or campus, sells, gives away, or exposes for sale,
    any vinous or alcoholic liquors, is guilty of a misdemeanor," is constitutional.   That section is not violative either of the fourteenth
    amendment of the constitution of the United States, or of section 2
    of article I of the state constitution, providing that all laws of a general nature shall have a uniform operation; or subdivision 33, section
    25, of article IV, of the same constitution, providing that the legislature shall not pass local or special laws where a general law can
    be made applicable.

ID.—CASE TO WHICH GENERAL LAW IS INAPPLICABLE—SPECIAL LAW AP
    PROPRIATE.—Conceding that the section is a special law, solely designed to prohibit the sale of liquor within a mile and a half of the
    Leland Stanford, Jr., University, it would not follow that it must
    be condemned for that reason; for, if the case be one to which a
    general law cannot be made applicable, the constitutional limitation
    upon the power of the legislature is at an end, and the legislature
    may properly pass a special law to meet such a case.

ID.—GENERAL LAW APPLICABLE TO SINGLE CLASS.—A legislative enactment does not infringe the constitutional inhibition against passing
    special legislation in those cases where general laws may be made
    applicable, merely because the class to which it applies consists of
    but one unit, individual, or entity.

ID.—CLASSIFICATION OF EDUCATIONAL INSTITUTIONS BASED ON NUMBERS.
    —Section 172a of the Penal Code is penal, and passed in the exercise
    of the police power, with the apparent design to protect students
    in the formative periods of their lives from the temptations of
    alcoholic drink.   To accomplish such purpose, the legislature has the

constitutional power to make a classification of educational institutions based on numbers, as provided in such section.

ID.—JUDICIAL REVIEW OF CLASSIFICATION.—Where the discretion to so classify is vested in the legislature, the selection of a limit is a legislative power which will be judicially reviewed only in a plain case of abuse.

ID.—PRINCIPAL ADMINISTRATIVE OFFICES OF UNIVERSITY DEFINED.—The act is not rendered invalid because its operation is limited to that class of educational institutions which in addition to enrollment and residence of the specified number of students, has its "principal administrative offices" located upon the grounds or campus. The phrase "principal administrative offices," as used in the act, means the principal place of business of the university as a university, where the principal educational functions of the university are carried out.

APPLICATION for a Writ of Habeas Corpus directed to the Sheriff of San Mateo County.

The facts are stated in the opinion of the court.

Thomas, Gerstle, Frick & Beedy, and J. J. Lerman, for Petitioner.

Joseph J. Bullock, and Ross & Ross, for Respondent.

S. F. Leib, and Edward F. Treadwell, *Amici Curiæ*, for Leland Stanford Junior University.

HENSHAW, J.—Petitioner was arrested and convicted in the justice's court of a violation of the provisions of section 172a of the Penal Code, which section, in so far as it is pertinent to this consideration, reads as follows: "Every person who, upon or within one and one-half miles of the university grounds or campus, upon which are located the principal administrative offices of any university having an enrollment of more than one thousand students, more than five hundred of whom reside or lodge upon such university grounds or campus, sells, gives away, or exposes for sale, any vinous or alcoholic liquors, is guilty of a misdemeanor." He sued out and obtained a writ of *habeas corpus* from the superior court of San Mateo County asserting the illegality of this law and was remanded to custody. In like manner he was remanded under a writ of *habeas corpus* sued out by him and issued from the district court of appeal. As his petition before this court presents the question of the constitutionality of the section

of the Penal Code above quoted, for the final determination of that question a writ was issued from this court.

Petitioner contends that the act under which he was convicted violates article I, section 2, of the constitution of this state, which provides that all laws of a general nature shall have a uniform operation; that it violates the provision of article IV, section 25, subdivision 33, of the same constitution which provides that the "legislature shall not pass local or special laws in any of the following enumerated cases, that is to say— . . . 33. In all those cases where a general law can be made applicable." And, finally, he contends that the law is in violation of the fourteenth amendment of the constitution of the United States.

The argument of petitioner is that the law is, in fact, a special law directed against the sale of liquor within a mile and a half of the Leland Stanford Jr. University; that there is merely a colorable attempt to phrase the law in general language; that the limitations in the law of the number of enrolled students, of the number of students residing or lodging upon the university grounds and of the location of the principal administrative offices, are, one and all, unreasonable in themselves and designed to make the law applicable only to the one educational institution above named.

If the concession should be at once made that this is a special law and that it was designed to accomplish the very purpose which petitioner specifies, it still would not follow that the law must for that reason be condemned; for, if the case be one to which a general law cannot be made applicable, the constitutional limitation upon the power of the legislature is at an end and the legislature may properly pass a special law to meet such a case. (*People* v. *Mullender*, 132 Cal. 217, [64 Cal. 299].) If it be that the Leland Stanford University is an educational institution needing legislation and if, because of the character of the institution, its location or any one of a number of other reasons appearing sufficient to the legislative mind, the desired or required legislation is special to that university and is not applicable to educational institutions as a whole or as a class, there is no prohibition in the law against the legislature passing just such special legislation of this character as the exigencies of the situation may demand. If, therefore, the legislature had specifically addressed this legis-

lation to the requirements of the Leland Stanford University it would demand a very plain exposition of the abuse of legislative power before a court would hold that the legislation should have been made to apply to all or to any designated class of educational institutions.

But passing this consideration, we come to the question whether this legislation couched in general language is obnoxious to the constitutional inhibition against passing special legislation in those cases where general laws may be made applicable. And first, it is to be borne in mind that such legislation is not to be condemned merely because the class to which it applies consists of but one unit, individual, or entity. Thus, where population is made the basis of classification we have frequent instances of single cities or of single counties forming a separate class, but the classification itself·is never judicially condemned for that reason, because when the power to classify has been given to the legislature there is always with that power vested necessarily a very wide discretion in its exercise. (*Grumbach* v. *Lelande,* 154 Cal. 679, [98 Pac. 1059] ; *Ex parte King,* 157 Cal. 161, [106 Pac. 578] ; *Bacon* v. *Walker,* 204 U. S. 311, [27 Sup. Ct. 289, 51 L. Ed. 499].)

The law under consideration is penal. It is passed in the exercise of the police power. Its very apparent design is to protect students in the formative periods of their lives from the temptations of alcoholic drink. There is no occasion to point out the evils to which such alcoholic indulgences lead, in the deterioration of the moral and physical fibre of the student, in the destruction of discipline and in the general demoralization not alone to the student but to the educational institution itself which follows.

It is argued, however, that while in proper cases, numbers or population may be the basis of classification, the basis of numbers in a law such as this is entirely without justification. But we do not think this is sound. A classification of educational institutions for the indicated purpose may well be based on numbers. The legislature did not mean that any institution which called itself a university should for the purposes of this law, be considered a university. It proposed for those purposes to say, and did say, that it should be a university with an enrollment of a thousand students. True, as argued, there is no reason why an institution with an enrollment of

a thousand students should be put upon a different plane from an institution with an enrollment of nine hundred and ninety-nine students, but if this argument were to be recognized as final, it would mean the destruction of every classification based upon numbers or population, since no court could judicially declare in the case of a city or county that there was any difference justifying a classification between a population of ninety-nine thousand nine hundred and ninety-nine and a hundred thousand. The judicial answer which has, and always must be made to this argument, is that made by the supreme court of the United States in *Bacon* v. *Walker*, 204 U. S. 311, [27 Sup. Ct. 289, 51 L. Ed. 499], namely that where the discretion so to classify is vested in the legislature, the selection of a limit is a legislative power which will be judicially reviewed only in a plain case of abuse.

The same answer is to be made to the second objection to the requirement touching a residence upon the university grounds of more than five hundred enrolled students. There is, in this respect, of course, no material difference between a residence of five hundred students and a residence of five hundred and one students. The legislature, however, has seen fit to prescribe that there shall be a residence of more than five hundred students. It may have been within the legislative contemplation that when a lesser number of the students is resident upon the university grounds, it is within the power of the university authorities to exercise such personal control over them as to relieve from the necessity of passing such a penal law. However this may be, the basis of the classification is not inherently unreasonable. It was within the legislative power and discretion to fix some limit, and while there is no essential difference between four hundred and ninety-nine resident students and five hundred resident students, yet, if you carry the reasoning down the scale, still recognizing that there is no essential difference between four hundred and ninety-nine resident students and four hundred and ninety-eight resident students, the point will be reached where there is a marked difference between five hundred resident students and two resident students. It will, of course, be said that such a law for two resident students would be unnecessary, but within its powers the legislature has said that such a law becomes necessary when there are more than five hundred resident students, and a court cannot say

that the limit which the legislature has thus fixed is so inherently unreasonable as to destroy the law itself.

The third objection to the validity of this act is that it limits the operation of the law to that class of educational institutions which, in addition to enrollment and residence of the specified number of students, has its "principal administrative offices" located upon the grounds or campus. In other words, the selling of liquor is prohibited within one and a half miles of only those grounds or campuses upon which are situated the "principal administrative offices" of the university. "Principal administrative offices" is not a fortunate phrase in a penal law such as this, since very clearly it requires construction. If "principal administrative offices" is to be construed to mean the meeting place of the regents of the University of California or the meeting place of the trustees of the Leland Stanford University, it would often be that the "principal administrative offices" of a university will be found far removed from the grounds or campus upon which the educational activities of the institution are carried on. It cannot be that this was the meaning of "principal administrative offices" as employed in this section. The phrase is used as descriptive of the character of the grounds or campus to which the penal law is made to apply. It is not made to apply to university grounds or a university campus generally. Thus, treating of the University of California, it would not apply to its subordinate grounds where special educational activities were in progress. It would not apply to the Lick Observatory. It would not apply to the Affiliated Colleges. It would not apply to its agricultural stations, but would apply only to those grounds and that campus which form the center of its activities, and where, because they are the center of its activities, the "principal administrative offices" within the meaning of the law must be located. In this sense the "principal administrative offices" does not mean those offices and those activities through which the university as an institution is organized and financed. It means the principal place of business of the university *as a university* where the principal educational functions of the university are carried out. So construed the law means to limit the inhibition upon the sale of liquor to what we may designate the university proper, and the language is so chosen to avoid any possible application

CLX Cal.—20

of the law to any outlying grounds or campuses, and so construed, there is nothing unreasonable in the phrase "principal administrative offices."

It follows from the foregoing that if the classification here made be a narrow one, there is still reason for its narrowness and the law operates uniformly upon all within the designated class.

Wherefore, the writ is discharged and the prisoner is remanded.

Angellotti, J., Sloss, J., Shaw, J., Melvin, J., and Lorigan, J., concurred.