[S. F. No. 21255. In Bank. June 11, 1963.]

L. A. WALSH, Plaintiff and Respondent, v. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Defendant and Appellant.

758

Stanley Mosk, Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Defendant and Appellant.

Huovinen & White and Joseph T. White, Jr., for Plaintiff and Respondent.

SCHAUER, J.—Defendant Department of Alcoholic Beverage Control (hereinafter sometimes called "the department") appeals from a judgment, entered in a citizen's action, directing issuance of a peremptory writ of mandate restraining defendant from granting an application for transfer of a general off-sale liquor license to certain premises located on Telegraph Avenue in Berkeley.

The ultimate issue presented is one of statutory construction. In applying the prohibition set forth in Penal Code section 172[1] against the sale of intoxicating liquor "with-

[1]Section 172 provides in relevant part: "Every person who, . . . within one mile of the grounds belonging to the University of California, at Berkeley, . . . sells, gives away, or exposes for sale, any intoxicating liquor, is guilty of a misdemeanor, and upon conviction thereof shall be

in one mile of the grounds belonging to the University of California, at Berkeley," shall that statutory distance be measured (1) from the nearest point of the "main" or "traditional" campus of the university (as the department has held), or (2) from the nearest point of other property in Berkeley recently acquired by the university as part of its expansion program and upon which student dormitories have been constructed (as the plaintiff contends)? We must, in resolving this issue, not only consider the conventional and traditional principles of statutory construction but also, as the problem is apparently one which may recur in differing applications, give heed particularly to the practical workability of the rule we declare. Under these criteria we have concluded that the first of the above stated measuring points is the proper one, and hence that the judgment directing mandate should be reversed.

The facts are not in dispute. Joseph Navone, holder of a general off-sale liquor license in Oakland, applied to the department for a transfer of that license to premises situated at 3053 Telegraph Avenue in Berkeley. The latter location appears to be a corner grocery store or market, which for a number of years has held an off-sale beer and wine license. A protest was filed by one L.A. Walsh, plaintiff herein (sometimes hereinafter referred to as "protestant"), who alleges that he "owns property at 469-66th Street, Oakland . . . and resides at . . . San Leandro, California." Plaintiff's single ground of protest is that the premises to which the transfer would apply are "within one mile of the grounds belonging to the University of California, at Berkeley" and hence fall within the prohibition of Penal Code section 172 (*ante,* fn. 1).

At the hearing on the application and protest the parties stipulated that the subject premises were more than one mile distant from the "main" campus of the university (i.e., bounded by Bancroft Way, Fulton and Oxford Streets, Hearst Avenue, and the university property on Strawberry Creek) as measured from the intersection of Telegraph Avenue and Bancroft Way, but only nine-tenths of a mile from new student dormitories erected on the block (Block No. 1874) bounded by Dwight Way, College Avenue, Bowditch and Haste Streets. It was also established that title to the latter

punished by a fine of not less than one hundred dollars ($100), or by imprisonment for not less than 50 days or by both such fine and imprisonment, in the discretion of the court."

property was acquired by the university between 1952 and 1959 pursuant to a "Long Range Development Plan" adopted in its most recent form by the Board of Regents in 1956; that such property is in the southernmost of four city blocks thus acquired in whole or in large part and lying in a straight line from Bancroft Way southwards to Dwight Way; that the university property in the intervening three blocks is or will be devoted to similar dormitories, intramural playing fields, underground parking structures, and a "campus cultural center"; and that the bisecting east-west streets (i.e., Bancroft, Durant, Channing, and Haste) remain the property of and under the jurisdiction of the City of Berkeley. It was also established that both prior to and as a part of its Long Range Development Plan the university had acquired several parcels of land in Berkeley (and nearby communities) wholly isolated from other university properties; i.e., where—as distinguished from the subject dormitory property—none of the surrounding parcels or blocks was university-owned.

The hearing officer determined that the premises to which the proposed transfer would be applicable "are not within one mile of the grounds of the University of California at Berkeley" and that "it would not be contrary to public welfare and morals" to allow such a transfer; accordingly, it was recommended that the protest be overruled and the transfer be granted. The department adopted these recommendations as its decision. The protestant appealed, and the parties agreed that the matter be returned to the department for further hearing. On rehearing it was again recommended that the transfer be granted, and the department again so decided. The Alcoholic Beverage Control Appeals Board unanimously affirmed the decision of the department.

The protestant as plaintiff then instituted the present proceeding in the superior court against the department as defendant (Code Civ. Proc., §§ 1063, 1094.5). After hearing, the court issued a peremptory writ of mandate restraining the department from granting the subject transfer and remanding the matter for reconsideration in the light of the court's decision. The department has appealed.

Although some of the findings and conclusions of the court speak in terms of the challenged decision's being "not supported by substantial evidence or any evidence in the light of the record," it is apparent that in a material sense no question of the substantiality of evidence, or of factual conflict, is

actually involved. The sole contested issue which was before both the department and the court is one of law:[2] how should Penal Code section 172 (*ante*, fn. 1) be construed in determining the point from which the one-mile statutory limit around "the grounds belonging to the University of California, at Berkeley" is to be measured?

At the outset it should be made clear that whichever way this issue is decided, no *existing* licenses will be affected. Even under plaintiff's interpretation of the statute (i.e., measurement to begin at newly acquired "contiguous" property of the university) existing licenses would not be invalidated by past or future university expansion in view of the unequivocal declaration by the Legislature that "The extension of the boundaries of any institution mentioned in Sections 172, 172a, 172b, and 172d of the Penal Code shall not affect licenses issued and in effect at the time the boundaries are extended and such licenses are transferable from one person to another for use on the premises for which issued. . . ." (Bus. & Prof. Code, § 24052, second section of that number.) This provision, enacted in 1959, was in force at ths time of the department's decision in the present proceeding. And in 1961 the Legislature reaffirmed the policy thus declared by adding a materially identical provision to the Penal Code, section 172f.

The precise issue before us appears to be one of first impression in this state. No California case has been found construing the words, "within one mile of the grounds belonging

[2]Plaintiff's petition for mandate alleges "That it was . . . the duty of . . . [defendant] to refuse the issuance of a general off-sale liquor license . . . for the [subject premises] . . . because the issuance . . . would be in violation of Penal Code section 172; . . . That . . . [plaintiff] protested the issuance of the license on that ground, and [defendant] . . . found that the proposed premises were not within one mile of grounds of the University . . . [and] that Penal Code section 172 would not be violated by issuing said license. . . ."

Defendant's position (as stated in its points and authorities) is that "The record shows that the dormitory area which the petitioner claims is an integral part of the grounds of the University are [*sic*] not contiguous to the University of California Campus and that this area is interlaced by streets and other public thoroughfares under the jurisdiction, control and operation of the City of Berkeley. It will be noted too from the record that these various streets disconnect the University Campus from the various domitories [*sic*]. Disconnected parcels of property should not be considered to be part of the Campus and grounds of the University of California."

Relating, in a negative way, to the claimed factual issue, the trial court found that "there is no evidence that the Board of Regents of the University . . . ever officially designated or described certain grounds as constituting the University of California at Berkeley."

to the University of California, at Berkeley'' (Pen. Code, § 172). Nor is there evidence in the record showing the substance of any heretofore established administrative practice in this regard. However, during the proceedings before the hearing officer an agent of the department testified that in the course of his official duties he had had occasion to assist in the measurement of distances, for licensing purposes, from the University of California at Berkeley; but when counsel for the applicant sought to ask the witness ''where the starting point was for measuring distances south of the campus,'' an objection by plaintiff (then protestant) on the ground of irrelevancy was sustained. Such evidence could well have been admitted, as the contemporaneous construction of a statute by the administrative agency charged with its enforcement (and Penal Code section 172 is primarily relevant to licensing by the department) may be proved as a relevant fact and is ''entitled to great weight.'' (*Cannon* v. *Industrial Acc. Com.* (1959) 53 Cal.2d 17, 22 [2] [346 P.2d 1], and cases there cited.)

■ In default of prior judicial interpretation, we begin by determining the purpose of section 172. The purpose of a related statute, Penal Code section 172a,[3] has been defined as follows: ''The law under consideration is penal. It is passed in the exercise of the police power. Its very apparent design is to protect students in the formative periods of their lives from the temptations of alcoholic drink.'' (*Matter of Burke* (1911) 160 Cal. 300, 303 [116 P. 755].) The prevention of such ills, whether real or imagined, appears also to be the purpose of the subject portion of section 172.

The department carries further the analogy between sections 172 and 172a, contending that the latter's use of the disjunctive phrase ''grounds *or* campus'' demonstrates that the two terms are interchangeable and hence that in section 172 the words ''grounds belonging to the University of California, at Berkeley'' should be construed to mean ''campus of the University of California, at Berkeley.'' The department then points to two instances when the Legislature specifically distinguished between the ''campus'' and the ''other grounds''

[3]Section 172a provides in relevant part: ''Every person who, upon or within one and one-half miles of the university grounds or campus, upon which are located the principal administrative offices of any university [having in excess of a specified enrollment] . . . sells, gives away or exposes for sale, any intoxicating liquor, is guilty of a misdemeanor; . . .''

of the university,[4] and urges that the dormitory property here involved is likewise to be distinguished from the "campus" in applying section 172.

In *Vanoli* v. *Munro* (1956) 147 Cal.App.2d 179, 185 [1] [304 P.2d 722], a decision construing section 172a, the court indicated that "campus" boundaries may not include "noncontiguous lands, nor lands obviously not connected with the university and not used for university purposes." In so stating the court admittedly followed *Matter of Burke* (1911), *supra*, 160 Cal. 300, 305-306, where "outlying grounds or campuses" were excluded from the operation of section 172a. The department contends that the subject dormitory property is "noncontiguous" within the meaning of the *Vanoli* case, stressing (1) the fact that the City of Berkeley retains title to and jurisdiction over the streets (Bancroft, Durant, Channing, and Haste) bisecting the four city blocks here involved (including Block No. 1874), and (2) the fact that the university has not acquired certain lots in those blocks.

Plaintiff contends that the presence of bisecting streets does not destroy the contiguity of this dormitory property to the "main" campus, citing *People* v. *Thompson* (1954) 43 Cal.2d 13, 23 [4] [271 P.2d 507]. *Thompson,* however, was an eminent domain case holding that *for the purpose of determining liability for severance damages* adjacent parcels separated only by a highway may be deemed "contiguous"; a ruling on such an unrelated issue is not controlling here. Nor does plaintiff meet the second of the department's just stated points, i.e., that the university has acquired only certain portions of the city blocks here involved and does not intend to acquire the remainder.

These considerations underscore the department's further

[4]First, the department notes that in the statute authorizing construction of such dormitories the Legislature provided that "The regents may construct any project and acquire all property necessary therefor in such manner and at such location and on such terms and conditions as it [*sic*] may deem advisable. A project may, but *need not, be constructed or acquired on any campus and may be constructed or acquired at any location* deemed by the regents advisable for the accomplishment of the purposes of this act." (Italics added.) (Stats. 1947, ch. 1027, p. 2298.)

Secondly, the department points out that in defining the jurisdiction of the university's police department the Legislature provided that "such officers shall not exercise their powers or authority except (a) upon the *campuses* of the University of California and an area within one mile of the exterior boundaries of each thereof, and (b) in or about *other grounds or properties* of the University of California." (Italics added.) (Ed. Code, § 23501.)

contention (as stated in its points and authorities) that "Some attempt must be made to interpret Penal Code section 172 reasonably otherwise very chaotic conditions may result from a too loose application of the code section. For example, the University of California owns and operates quarters for married students in the City of Albany, it owns a group of [service] yard sites some distance away from the campus." Is the one-mile limit to be measured from such "grounds" as well? Is *each* newly-acquired parcel of university-owned property (even if "contiguous" in the somewhat strained sense urged by plaintiff) to serve as a new measuring point in processing all future applications for the award or transfer of liquor licenses? Such a rule, as the department emphasizes, would prove difficult indeed to administer. By contrast, a construction limiting the reach of section 172 to a one-mile radius measured from the traditional "main" campus (as appears to be the department's practice) would ensure to the agency a workable basis of computation and result in a greater certainty—and hence, fairness—in the administration of the liquor laws.

In any event it is clear that, like section 172a, "The law under consideration is penal." (*Matter of Burke* (1911), *supra,* 160 Cal. 300, 303.) It declares (*ante,* fn. 1) that "Every person" who sells, etc., intoxicating liquor within the proscribed areas "is guilty of a misdemeanor" and "upon conviction thereof shall be punished" by fine, imprisonment, or both. It is fundamental that penal statutes shall not be enlarged upon by the courts. ▮ "When language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted. In other words, criminal statutes will not be built up 'by judicial grafting upon legislation. . . . ▮ [I]t is also true that the defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute.' " (*People* v. *Ralph* (1944) 24 Cal.2d 575, 581 [2] [150 P.2d 401], quoting from *Ex parte Rosenheim* (1890) 83 Cal. 388, 391 [23 P. 372]; accord, *In re Tartar* (1959) 52 Cal.2d 250, 256 [9] - 257 [10] [339 P.2d 553], and cases there cited.) ▮ Indeed, it is "the policy of California (see, e.g., *People* v. *Stuart* (1956) 47 Cal.2d 167, 175 [7] [302 P.2d 5, 55 A.L.R.2d 705]) to construe and apply penal statutes as favorably to the defendant as the language of the statute and

the circumstances of its application may reasonably permit.'' (*Chessman* v. *Superior Court* (1958) 50 Cal.2d 835, 843 [6] [330 P.2d 225].) These principles are not rendered inapplicable merely because the present action arose out of an administrative proceeding rather than a criminal prosecution; the statute to be construed remains a penal one, and the foregoing principles apply even when the underlying action is civil in nature. (See, e.g., *De Mille* v. *American Federation of Radio Artists* (1947) 31 Cal.2d 139, 156 [11] [187 P.2d 769, 175 A.L.R. 382] ; *Sharpensteen* v. *Hughes* (1958) 162 Cal.App. 2d 381, 387 [4] [328 P.2d 54].)

Accordingly, we hold that for the purpose of applying section 172 of the Penal Code, the ''grounds belonging to the University of California, at Berkeley'' are to be limited to the traditional ''main'' campus of that institution as hereinabove described.

The judgment is reversed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.