[Civ. No. 63991. Second Dist., Div. Three. Apr. 27, 1983.]

**[As modified May 25, 1983.]**

THE PEOPLE, Plaintiff and Appellant, v.
MOBIL OIL CORPORATION, Defendant and Respondent.

**[Opinion certified for partial publication.†]**

†See *post*, page 275.

## COUNSEL

George Deukmejian, Attorney General, R. H. Connett, Assistant Attorney General, and David A. Eissler, Deputy Attorney General, for Plaintiff and Appellant.

McCutchen, Black, Verleger & Shea, Philip K. Verleger, Ward L. Benshoof, Donna R. Black and Lawrence J. Straw, Jr., for Defendant and Respondent.

## OPINION

**DANIELSON, J.**—The State of California brought a civil action against Mobil Oil Corporation to recover civil penalties for alleged violations of the law and regulation which establish maximum standards for the volatility of gasoline sold as motor fuel in California. The court granted defendant's motion for judgment after the close of plaintiff's case. Plaintiff appeals from that judgment. Affirmed.

### PROCEDURAL AND FACTUAL ASPECTS OF CASE

The underlying civil action was brought by the People of the State of California (hereafter plaintiff) at the request of the State Air Resources Board (hereafter ARB) against Mobil Oil Corporation (hereafter defendant) to recover civil penalties for selling and supplying, as a fuel for motor vehicles, gasoline having a volatility in excess of that permitted by law. The first amended complaint alleged two thousand six hundred fifteen (2,615) such violations, between August 16 and 26, 1977, subject to a civil penalty of not to exceed five hundred dollars ($500) per vehicle, for a total of $1,307,500.

In 1975 the Legislature enacted former Health and Safety Code section 43830, directing the ARB to ". . . establish, by regulation, maximum stan-

dards for the volatility of gasoline at nine pounds per square inch Reid vapor pressure[1] as determined by the American Society for Testing and Materials[2] test D323-58, or by an appropriate test determined by the state board, for gasoline sold in this state." (Stats. 1975, ch. 957, § 12.)

Health and Safety Code section 43016 establishes ". . . a civil penalty of not to exceed five hundred dollars ($500) per vehicle. . . ." for violations of section 43830 or any regulation of the ARB adopted pursuant thereto.

Pursuant to the directive of former Health and Safety Code section 43830, the ARB promulgated the regulation set forth in title 13, California Administrative Code, section 2251, which prohibits the selling or supplying as fuel for motor vehicles of ". . . gasoline having a *Reid Vapor Pressure* greater than nine pounds per square inch *as determined by ASTM Method D323-58. . . .*" (Italics added.)

ASTM Method D323-58,[3] described by its own terms as a "Standard Method of Test for Vapor Pressure of Petroleum Products (Reid Method)" is a specific and precise method to be followed in determining the vapor pressure of volatile petroleum products. It prescribes in detail the techniques and procedures to be followed in making such a test, and also prescribes with great specificity the components of the apparatus to be used in making the test and the manner in which those components are to be employed. The text of the method includes a caveat reading "Precautions [¶] 7. Gross errors can be obtained in vapor pressure measurements if the prescribed procedure is not followed carefully." The method also directs that the samples to be analyzed pursuant to ASTM Method D323-58 shall be taken in accordance with the requirements of ASTM Method D270, "Standard Method of Sampling Petroleum and Petroleum Products."[4]

Trial by the court began on January 22, 1980. Evidence adduced during plaintiff's case showed that the plaintiff's investigators and technicians had deviated from some of the specific procedural requirements of ASTM Method D323-58 in testing the Rvp of samples of gasoline taken from filling stations supplied by defendant, and had also deviated from ASTM Method D270 in taking the samples which were tested. These deviations were variously described during testimony as "deviations," "alternative procedures," "departures,"

---

[1]Hereinafter sometimes Rvp.

[2]Hereinafter ASTM.

[3]Hereafter, ASTM Method D-323-58 and ASTM Method D-270 are included in the reference, The Method, since the methods prescribed by law and regulation for testing gasoline samples for Reid vapor pressure, and for taking the samples to be so tested, are set forth in these two ASTM methods.

[4]See footnote 3, *ante.*

and "alternative equipment." Plaintiff's witnesses testified that these deviations were "marginal," "minimal," or "not significant" in their impact on the Rvp tests.

After plaintiff rested defendant moved for a judgment pursuant to Code of Civil Procedure section 631.8.[5] Defendant's counsel characterized the deviations, and their impact on the results of the Rvp tests, as "substantial and meaningful." Defendant's argument was that the deviations and departures were so critical that they destroyed the validity of plaintiff's Rvp tests; that, in fact, the test results upon which plaintiff's case was based had not been determined by The Method as mandated by law and regulation, and that there was no evidence that defendant had violated the law as alleged in the complaint.

After argument was concluded the court announced: "The 631.8 motion will stand submitted. . . . I need further elucidation and education before I can be more definitive than I am at the present time." Defendant then proceeded to present its case.

On the second day of defendant's case, the court permitted plaintiff to reopen and to introduce additional evidence on the section 631.8 issues. The court then announced that the matter was again submitted, and proceeded with defendant's case.

At the beginning of the sixth day of defendant's case, the court announced its tentative ruling granting defendant's motion for judgment and stating his reasons to be that he deemed some of plaintiff's departures from the testing and sampling procedures mandated by former Health and Safety Code section 43830, and the regulation promulgated thereunder, to be "substantial" and "meaningful;" that the vapor pressure of defendant's gasolines had not been shown to have been ". . . determined by ASTM Method D323-58 . . . [and] without such showing, the plaintiff's case must fall for want of fundamental proof."

The tentative ruling on the motion was argued at length, briefs were submitted by the parties, and with some modifications, the ruling was final.

The court made findings of fact and conclusions of law, based upon the evidence adduced in the plaintiff's case. It found that the ARB had failed to follow the requirements of ASTM D323-58 in testing the vapor pressure of defendant's gasoline, that certain specified deviations by the ARB from the procedures prescribed by method ASTM D323-58 were substantial and meaningful, that there was ". . . a total failure of proof of any vapor pressure

[5]Section references herein are to the Code of Civil Procedure unless otherwise specified.

measurement as 'determined by ASTM D323-58';" and that plaintiff's evidence did not define the effect on the Rvp results which would flow from the deviations, alone or in combination, nor did it quantify what corrections would need to be made to its results to account for the combined effect of the various departures from the prescribed test method. Judgment for defendant was entered accordingly from which this appeal is taken.

CONTENTIONS ON APPEAL

Plaintiff's contentions can be summarized as follows:

The trial court erred prejudicially by granting defendant's motion for judgment under section 631.8 without granting plaintiff an opportunity to present additional evidence in rebuttal and to rehabilitate the credibility of a witness before ruling on the motion, because (1) section 631.8 requires that plaintiff be granted that opportunity as a matter of clear and absolute right; (2) when defense evidence has been heard, which plaintiff deems to be adverse, plaintiff's right to present additional evidence under section 631.8 is unequivocal and mandatory; (3) even if section 631.8 requires that plaintiff be permitted to present rebuttal evidence only when the trial court relies upon defense evidence in ruling on the motion for judgment, the trial court did so rely in the case at bench, as is demonstrated by the following: (a) the trial court took the motion under submission, while defendant commenced presenting its case, before ruling on the motion; (b) the record shows that the trial court "must have" relied on defendant's evidence; and (c) since the trial court relied upon defense evidence, it cannot deny plaintiff's right to present additional evidence in rebuttal and for rehabilitation even if plaintiff's evidence, alone, was sufficient to support the granting of the motion; and (4) the defendant challenged both the credibility of plaintiff's expert witnesses and their conclusions as to what plaintiff's evidence proved.

DISCUSSION

*Preliminary*

*The Purpose of Section 631.8.*

■ The purpose of section 631.8 is to enable the trial court to dispense with the need for the defendant to present evidence when, after weighing the evidence at the close of the plaintiff's case, the court is persuaded that the plaintiff has failed to sustain its burden of proof.[6] (*Heap* v. *General Motors Corp.* (1977) 66 Cal.App.3d 824, 829 [136 Cal.Rptr. 304].)

---

[6]We recognize that section 631.8 permits either party to move for a judgment at the close of the other's case. Ordinarily, however, the motion is made by the defendant at the close of the

*Section 631.8 Before the 1978 Amendment.*

Before the 1978 amendment, section 631.8, in pertinent part, read as follows: "After a party has completed his presentation of evidence in a trial by the court, the other party, . . . may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make findings . . . or may decline to render any judgment until the close of all the evidence. . . ." (Stats. 1971, ch. 244, § 53.)

Former section 631.8, enacted in 1961, permitted either party to move for a judgment at the close of the other's case and directed the court to weigh the evidence and to make findings. Prior to the 1978 amendment, the statute did not specify what evidence the court could weigh and thus permitted the argument that the court could, or should, weigh all of the evidence before it, regardless of whether it was plaintiff's evidence or defendant's evidence. (See *Miller* v. *Dussault* (1972) 26 Cal.App.3d 311, 317 [103 Cal.Rptr. 147], which rejected such an argument.)

*Eddy* v. *Gallaway* (1970) 11 Cal.App.3d 185 [89 Cal.Rptr. 491], established that exhibits introduced by defendant during cross-examination of plaintiff's witnesses could be considered by the court in ruling on the 631.8 motion. The court held that the statute commands the court to weigh the evidence; that cross-examination assists the court in the weighing process; that the defense exhibits were properly received in cross-examination of what plaintiff's witnesses testified to on direct examination; and that the court was therefore entitled to consider those exhibits when, in ruling on the motion, it weighed that testimony. Also, in *Eddy*, a defense witness had been called out of order, as a courtesy to defense counsel, during the presentation of plaintiff's case. The reviewing court held that the findings based on his testimony could be disregarded as surplusage, immaterial to the issues of plaintiff's complaint, without impairing the findings which supported the judgment. (*Id.*, at p. 192.)

In *Miller* v. *Dussault, supra,* 26 Cal.App.3d 311, both sides placed in evidence a number of documents in the course of direct and cross-examination of plaintiffs' witnesses. Two crucial defense exhibits, sharply discrediting the testimony of the plaintiff, had been received in evidence, out of order, before the plaintiff's case was completed. The exhibits were heavily relied on by defendant in arguing its motion for judgment and were considered by the trial court in granting defendant's motion. The court of appeal reversed the judg-

---

plaintiff's case when the evidence before the court is primarily that of the plaintiff. That is the situation in the case at bench, which we discuss from that point of view. The same principles, with appropriate adaptations, would apply if the motion were made at the close of defendant's case.

ment, holding that the trial court erred, prejudicially, by considering the defense exhibits as a part of the evidence before it on the motion for judgment.

The reviewing court pointed out that although litigants embark upon a trial relying on the standard order of proof (§§ 607, 631.7), there are, in practice, variations upon that standard order. The plaintiff may call the defendant as a witness for "cross-examination" under Evidence Code section 776, and defense counsel may then examine his own client "as if under redirect examination" and at that time may offer defense exhibits as adjuncts to defendant's testimony. Although it is received during plaintiff's case, evidence elicited under Evidence Code section 776, is not treated as plaintiff's evidence. Aside from that section, a party may be permitted to call a witness out of order, as a matter of convenience and courtesy, during the presentation of the other party's case. Also, defense exhibits are sometimes introduced into evidence during the presentation of plaintiff's case in chief.

"Consequently, when the plaintiff rests, the body of evidence before the court often comprises something other than the plaintiff's case pure and unsullied. It may include a heavy mixture of defensive matter. The . . . motion for judgment statute [§ 631.8] makes [no] allowance for this mixture." (*Id.*, at p. 318.) That statute ". . . silently assume[s] that the plaintiff's proofs, not the proofs on both sides, form the array of evidence to be measured against the challenge. . . ." [of the motion for judgment.] (*Id.*, at p. 317.)

The plaintiffs/appellants in *Miller* v. *Dussault* contended that in granting the motion for judgment the trial court had abused its discretion by denying them an opportunity for rebuttal concerning the defense exhibits. In reversing the judgment, the court said: "Although . . . plaintiffs complain principally of the deprivation of rebuttal, that deprivation was a secondary injury. The primary injury stemmed from the inclusion of unfavorable defense exhibits in the array of evidence the court was weighing. Had the court considered plaintiffs' evidence alone, had the court disregarded the unfavorable Dussault letters elicited 'out of order,' the lack of opportunity to rebut the latter would have had no immediate consequence. We conclude that the trial court erred prejudicially by considering the two Dussault letters as part of the body of evidence before it on the motion for judgment." (*Id.*, at p. 319.)

Thus, prior to the 1978 amendment to section 631.8, when defendant moved for judgment at the close of plaintiff's case, the court, as trier of the facts, was directed to weigh all of plaintiff's evidence, together with testimony properly adduced and defense exhibits properly received in cross-examination of plaintiff's witnesses, in deciding whether to render the judgment; however, the trial court could not consider other defense evidence in the array of evidence the court was weighing. Stated conversely, when ruling on such a motion, the court

was to consider only the evidence presented by the plaintiff and that presented and received during cross-examination of plaintiff's witnesses.

*The 1978 Amendment to Section 631.8.*

In 1978 the Legislature amended section 631.8 by adding to the first paragraph a third sentence which reads: "The court may consider all evidence received, provided, however, that the party against whom the motion for judgment has been made shall have had an opportunity to present additional evidence to rebut evidence received during the presentation of evidence deemed by the presenting party to have been adverse to him, and to rehabilitate the testimony of a witness whose credibility has been attacked by the moving party."

What was the Legislature's intent in enacting the 1978 amendment?

■ In determining the Legislature's intent in amending a statute that has been the subject of judicial construction, the court must proceed in light of the decisional background against which the Legislature acted. (*People* v. *Dixon* (1970) 24 Cal.3d 43, 51 [154 Cal.Rptr. 236, 592 P.2d 752]; *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].)

■ In construing a statute, courts should ascertain the intent of the Legislature so as to effectuate the purpose of the law. The courts should not change the clear words of a statute to accomplish a purpose that does not appear on the face of the statute or from its legislative history. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) "Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible." (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].)

The 1978 amendment did not change the previous wording of the section. The amendment is a single sentence, which uses both "may" and "shall" in directing the manner in which the courts are to "consider all evidence received." ■ "When the Legislature has, as here, used both shall and may in close proximity in a particular context, we may fairly infer the Legislature intended mandatory and discretionary meanings, respectively. The ordinary import of 'may' is a grant of discretion . . . . [citation] An exercise of such discretion will not be disturbed on review unless abused." (*In re Richard E.* (1978) 21 Cal.3d 349, 353-354 [146 Cal.Rptr. 604, 579 P.2d 495].)

As we have seen, section 631.8 had a substantial history of judicial construction before the 1978 amendment. The rule of *Miller* v. *Dussault* and *Eddy* v. *Gallaway*, had prevailed for several years. It held that, in ruling on a motion for judgment at the close of plaintiff's case, the court was to consider only the evidence presented by the plaintiff and that elicited, presented and received within the proper scope of cross-examination of plaintiff's witnesses.

In the light of the foregoing principles, we find that the 1978 amendment to section 631.8 is a legislative response to the fact that when a defendant moves for a judgment after the plaintiff has completed his presentation of evidence ". . . the body of evidence before the court often comprises something other than the plaintiff's case pure and unsullied. It may include a heavy mixture of defensive matter. . . ." (*Miller* v. *Dussault, supra,* 26 Cal.App.3d at p. 318.) This "heavy mixture of defensive matter" may be difficult to disregard when a motion for judgment is under consideration.

The 1978 amendment responds to the problem recognized in *Miller* v. *Dussault* by adding to section 631.8 that the court *may* consider all evidence received. The court need not do so. It *permits* the court, in the court's *discretion,* to consider all the evidence which has then been received, including defensive matter, *provided, however,* that the party against whom the motion has been made *shall* have had an opportunity to rebut and to rehabilitate, as specified. ▮ Proceeding in the light of the decisional background against which the Legislature acted, and construing the amendment so as to achieve internal harmony in section 631.8, we hold that the 1978 amendment requires that when a motion for judgment is made at the close of plaintiff's case, the plaintiff shall have had an opportunity to present additional evidence to rebut and to rehabilitate if, but only if, the court exercises its discretionary power to consider defensive matter in the body of evidence which the court weighs in ruling on the motion.

*Section 631.8 Does Not Give the Presenting Party an Absolute Right to Present Additional Evidence to Rebut Evidence Deemed Adverse, and for Rehabilitation, Under All Circumstances, Before the Court Can Rule on a Motion for Judgment.*

Plaintiff's contentions that, before the court can rule on a motion for judgment, section 631.8 requires, as a matter of clear and absolute right, that plaintiff must have an opportunity to present additional evidence to rebut evidence which plaintiff deems adverse, and for rehabilitation, and that such right becomes unequivocal and mandatory once defense evidence has been heard, are totally without merit.

As we have seen, the 1978 amendment to section 631.8 requires that the presenting party shall have such opportunity only if the court exercises its discretionary power to consider defensive matter in the body of evidence which the court weighs in ruling on the motion.

The same rule applies even though defense evidence may have been heard before the court has made a ruling on the motion. The opportunity to present additional evidence is not founded on whether defense evidence has been heard, but on whether the court *considers* the defensive matter in the body of evidence which it weighs in ruling on the motion.

*Plaintiff Was Not Denied an Opportunity to Present Additional Evidence to Rebut and to Rehabilitate.*

Plaintiff rested on Thursday morning, February 14, and requested a directed verdict for plaintiff. Defendant then made its motion for judgment under section 631.8. The motion was argued by the parties during the remainder of the day. It is necessarily implicit that plaintiff did not then deem any of the evidence before the court to be adverse to plaintiff nor the credibility of any of plaintiff's witnesses to have been attacked. The thrust of defendant's argument was that plaintiff's own evidence showed inadequate compliance with test procedures.

Plaintiff made no request to present additional evidence and did not ask for a continuance to obtain additional evidence in order to rebut evidence which had been received or to rehabilitate its witnesses.

When the trial resumed on the following morning, the court announced that plaintiff's motion for a directed verdict was denied and that the 631.8 motion would stand submitted because the court needed "further elucidation and education before it could be more definitive" than it then was. Again, the plaintiff made no request for an opportunity to present additional evidence. Defendant then commenced presentation of its evidence.

On the next trial date, the court opened the session by announcing that it had read and considered a memorandum of points and authorities presented by plaintiff in opposition to the 631.8 motion, which contained two suggestions that had not been made orally, and the court deemed these suggestions to be an application for leave to introduce further evidence. The record reflects that plaintiff had filed a memorandum of points and authorities ". . . in response to defendant's motion under . . . section 631.8 and to supplement plaintiff's oral argument with respect thereto . . . ."

The court permitted plaintiff to reopen, commenting that cross-examination had shaken the testimony of one of plaintiff's experts "to some extent." Plaintiff read into the record excerpts from the depositions of eight witnesses on the subject of testing procedures followed in some laboratories other than the laboratories of the ARB. Plaintiff also offered to produce another witness from Bakersfield to testify as to the use of a master gauge rather than a mercury manometer in making the tests. When plaintiff's counsel explained the purpose of the witness' testimony, the court said, "Well, as to that, I would suggest that . . . be made by way of rebuttal, *if necessary,* at that point." (Italics added) Plaintiff then called one witness who testified.

At the end of that testimony, the court asked, "Anything else?" Counsel for both parties responded that there would be nothing further, and the court announced, "All right. The matter will stand submitted. We will proceed in the normal course." Defendant resumed presentation of its case.

Plaintiff did not, at any time during the reopened proceedings, assert that it deemed any of the evidence that had been received to be adverse to plaintiff nor that the credibility of any of its witnesses had been attacked. Plaintiff did not request an opportunity to present additional evidence to rebut or to rehabilitate as provided in section 631.8.

At the beginning of the fifth day of defendant's case, the court asked both parties the nature of the testimony of the remaining witnesses they intended to call. Plaintiff stated that it had two witnesses for rebuttal. At the close of the session on that day, the court asked plaintiff's counsel the nature of the proof he would be eliciting, and he informed the court that the testimony would mainly be on how and why, plaintiff believed, that defendant had violated the gas pressure statute and regulation.

On the morning of the following day, the court announced its tentative ruling, granting defendant's motion for judgment. The tentative ruling was argued at length, then briefed by the parties and, with a few modifications, made final.

At no time during these final proceedings did plaintiff request an opportunity to present additional evidence to rebut adverse evidence received during the presentation of plaintiff's case or to rehabilitate the testimony of any of plaintiff's witnesses whose credibility had been attacked by defendant. Nor did plaintiff contend that it deemed any such evidence to be adverse to plaintiff.

At all such times, the plaintiff was fully aware of the 1978 amendment to section 631.8, as is evident from a statement made in plaintiff's brief in opposition to defendant's motion, which plaintiff's counsel repeated in oral argument to the court just before the close of the case when plaintiff's counsel stated, "Your

Honor, can I add one other portion to your woes? [¶] . . . In that . . . if the court uses testimony after we have rested and not given us an opportunity to rebut that testimony in rebuttal prior to making the decision, I believe it would raise a due process issue."

■ Despite plaintiff's knowledge that it could (and should) have claimed an opportunity to present additional evidence in rebuttal and to rehabilitate, *if the state of the evidence had called for that opportunity,* plaintiff did not make that claim and thereby waived its right to do so, if in fact such right had existed.

### The Credibility of Plaintiff's Witnesses Was Not Attacked.

The record is devoid of any basis whatever for plaintiff's contention that the credibility of its witnesses was attacked.

In making its tentative ruling final, the court commented, inter alia:

"I should also make clear for the record that the credibility of any witness has not been called into question in my ruling and with the exception of Dr. Liston's acknowleged nonexpertise in the area of Rvp testing, thus entitling his testimony in this area to very little, if any, weight, I have taken the testimony of each witness substantially at face value so that on review it shall not be deemed that I was dealing with credibility."

Dr. Liston had testified earlier that "I have never done a Reid vapor pressure test, or if I have it hasn't been since I was in college." The record does not establish when Dr. Liston was in college but reflects that he had been engaged in research and development for over 20 years before the trial.

### The Judgment Was Supported by the Evidence.

Plaintiff does not directly challenge the sufficiency of the evidence, but plaintiff does assert that the court "must have" relied upon defense evidence in granting the motion since the court took the motion under submission and thus heard defense evidence before ruling and, also, the state of the evidence at the time plaintiff rested was such that the court could not grant the motion. This contention is without merit.

■ *In Considering a Defendant's Motion for a Judgment at the Close of the Plaintiff's Case, the Court May Consider and Weigh Only the Body of Evidence Which Is Before the Court at That Time.*

Section 631.8, both before and after the 1978 amendment, authorizes the motion for judgment to be made by a party only after the other party has completed

his presentation of evidence. The plain language of the statute clearly directs that the motion must be made by a specific party at a specified time, and it is necessarily implicit that in passing upon the motion the court must consider only the array of evidence before it at that time.

Plaintiff argues that in granting defendant's motion the trial court considered and weighed evidence presented by defendant through defendant's own witnesses, during defendant's case, and after plaintiff had rested. Based upon that assumption plaintiff contends that the trial court erred, prejudicially, in not granting plaintiff an opportunity to present additional evidence to rebut *defendant's* evidence and to rehabilitate plaintiff's witnesses.

The contention is without merit. We find, *infra,* that the trial court did not consider and weigh defendant's evidence in passing on defendant's motion for judgment in this case.

■ *Before Ruling on a Motion for Judgment Under Section 631.8, the Court Has a Right to Take the Motion Under Submission in Order to Give It Proper Consideration, Including a Full Weighing of the Evidence Before the Court.*

Plaintiff is critical of the trial court for taking defendant's motion for judgment under submission, and granting it several days later, after defendant had begun the presentation of its case.

The court had a right to take the motion under submission in order to give it proper consideration. The court did not err in not ruling upon the motion immediately upon its presentation, nor was there error in granting it at a subsequent time in the trial. Courts often have need to take a motion under submission and to rule upon it at a later time. (See *McClure* v. *Donovan* (1949) 33 Cal.2d 717, 737 [205 P.2d 17]; 44 Cal.Jur.3d, Motion Procedure, § 11; Cal. Rules of Court, rule 204.)

*Substantial Evidence Supports Judgment.*

In an unpublished portion of this opinion, we have determined that the substantial evidence rule applies to a motion for judgment under section 631.8 and that in the present case the trial court's findings of fact were supported by substantial evidence presented during plaintiff's case in chief.

The court concluded, inter alia, that (1) in an enforcement action for civil penalties, as charged in the complaint, the plaintiff must not depart from the prescribed test method in a manner which is substantial and meaningful, and (2) that there was no evidence that defendant's gasoline had a Reid vapor pressure in excess of 9 pounds per square inch "as determined by" The Method.

*When a Statute Is Penal in Nature, Its Penalty Clause Should Be Construed Narrowly.*

■ Plaintiff argues that Health and Safety Code sections 43830 and 43016; title 13, California Administrative Code, section 2251; and The Method for testing Reid vapor pressure, i.e., ASTM D323-58, should not be construed literally and that the several variations, deviations, departures, and substitutions which they made should not cause plainiff's case to fall. We disagree.

This case is based upon a penalty statute which imposes a substantial civil penalty—$500 for each vehicle to which the allegedly offensive gasoline is supplied or sold—$1,307,500 in the case at bench.

"Because the statute is penal, we adopt the narrowest construction of its penalty clause to which it is reasonably susceptible in the light of its legislative purpose. [Citations.]" (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 405 [149 Cal.Rptr. 375, 584 P.2d 512].)

This principle is not rendered inapplicable merely because an action arises out of an administrative proceeding rather than a criminal prosecution. Where the statute to be construed is a penal one, these principles apply even when the underlying action is civil in nature. (*Walsh* v. *Dept. Alcoholic Bev. Control* (1963) 59 Cal.2d 757, 765 [31 Cal.Rptr. 297, 382 P.2d 337].)

In the case at bench, the parties were dealing with a highly technical subject matter without previous judicial interpretation. The trial court was dealing with the practical application of an officially adopted method for determining the Reid vapor pressure of gasoline. Reid vapor pressure is not true vapor pressure; it is an arbitrarily contrived concept. As the court found, Reid vapor pressure ". . . is an artificial construct which is the product of following the procedures specified in . . ." ASTM D323-58. The adoption of such a standard has the mutually beneficial result of providing an objective standard which can be used by the regulators in enforcing the laws and by the regulated industries in monitoring the quality of their product so as to be certain that it conforms to the laws and regulations.

Manufacturers who are to be held to standards of compliance are entitled to testing criteria that they can rely upon with certainty. The procedures should be rational and unequivocally demonstrable. Compliance should be based upon objective measures rather than the subjective opinions of human beings. (See *Paccar, Inc.* v. *National Highway Traffic Safety* (9th Cir. 1978) 573 F.2d 632, 644.) The text of The Method contains the following caveat:

"Precautions [¶] 7. Gross errors can be obtained in vapor pressure measurements if the prescribed procedure is not followed carefully. . . ." There is no room for variations, deviations, departures, and substitutions in such a procedure, whether based upon subjective preference or ease of performance.

We note that the ARB was not *required* to adopt Method ASTM D323-58 as its test for determining Rvp. Health and Safety Code section 43830 directs the ARB to utilize that test or ". . . an appropriate test determined by the state board . . . ." The ARB could have adopted a different appropriate test; it could have contrived and adopted a method which conformed to the procedures and equipment which it in fact did employ. But it officially adopted test method ASTM D323-58, and it was bound by that method, as were the regulated industries.

In this case judgment was entered on April 10, 1980. We have observed that, effective July 1, 1980, the ARB promulgated an amended section 2251 of title 13, California Administrative Code, in which it deleted paragraph 4(b) of The Method, concerning sampling.

DISPOSITION

The judgment is affirmed.

Potter, Acting P. J., and Lui, J., concurred.