[Civ. Nos. 20325, 20326.   First Dist., Div. Three.   June 14, 1963.]

EUGENE A. TALIAFERRO, Plaintiff and Appellant, v. DOROTHY D. TALIAFERRO, Defendant and Respondent.

[Civ. No. 20327.   First Dist., Div. Three.   June 14, 1963.]

EUGENE A. TALIAFERRO, Plaintiff and Appellant, v. DOROTHY DAVIS, Defendant and Respondent.

(Consolidated Cases.)

Eugene A. Taliaferro, in pro. per., for Plaintiff and Appellant.

Frisbie & Hoogs and W. H. Hoogs for Defendant and Respondent.

DRAPER, P. J.—These consolidated quiet title actions raise issues as to the applicability of the parties' 1943 property settlement agreement to numerous parcels of real estate. Plaintiff husband's title was quieted in several parcels found to have been acquired after the agreement. The remaining parcels were decreed to be subject to that agreement. Plaintiff appeals. Since the wife does not, only the parcels found to be subject to the agreement are in issue here.

In view of the welter of appeals generated by this divorce and agreement (*Taliaferro* v. *Taliaferro,* 203 Cal.App.2d

642 [21 Cal.Rptr. 864]; 203 Cal.App.2d 649 [21 Cal.Rptr. 868]; 203 Cal.App.2d 652 [21 Cal.Rptr. 870]; 200 Cal.App.2d 190 [19 Cal.Rptr. 220] and cases there collected at p. 191, fn. 1) it is surprising that a partially new issue remains for decision.

In dividing "the community property of the parties," the agreement specifies the rights of each in "the real estate belonging to the parties," but fails to describe or list the properties constituting such real estate. The parcels dealt with in this appeal were acquired in 1941 and 1942. The parties were married in 1927 and the property settlement agreement was signed in December 1943.

Husband asserts that he had several thousand dollars when the parties were married, and that the real estate in issue was purchased from those separate funds. But there is testimony that: husband, when charged with crime about 1932, had no funds to employ the attorney he desired; during his confinement in prison he had no funds for such purchases as were there allowed, and his wife furnished such sums from her earnings; he, his wife and their children received county welfare aid after his release; he filed a petition in bankruptcy in 1936 and was discharged in 1937. Thus there is ample evidence that the properties purchased in 1941-42 were bought with funds which, having been acquired during marriage, are presumed to be community property (Civ. Code, § 164). It follows that there is support for the finding that the lands were community property.

The deeds, however, ran to the parties as joint tenants. Despite the community character of the purchase money, the form of the deed gives rise to the presumption that the property is held in true joint tenancy (*Socol* v. *King*, 36 Cal.2d 342, 346 [223 P.2d 627]; *Perkins* v. *West*, 122 Cal.App.2d 585, 590 [265 P.2d 538]). But this presumption is rebuttable, and the property may be shown to be actually community property " 'according to the intention, understanding or agreement of the parties.' " (*Gudelj* v. *Gudelj*, 41 Cal.2d 202, 212 [259 P.2d 656]; *Socol* v. *King, supra.*) There need not be an agreement formally transmuting joint tenancy property into community property if the parties intended the property to be community in character when they received the deeds (*Martinelli* v. *California Pac. Title Ins. Co.*, 193 Cal.App.2d 604, 607 [14 Cal.Rptr. 542]). Here husband testified that the joint tenancy

form was chosen only "to avoid expensive probate fees." This testimony is a factor supporting inference that the joint tenancy deed was not intended to change the character of the property from that of the funds which paid for it (cf. *Bowman* v. *Bowman*, 149 Cal.App.2d 773, 776-777 [308 P.2d 906]; *Jenkins* v. *Jenkins*, 147 Cal.App.2d 527, 528-529 [305 P.2d 289]; *Mademann* v. *Sexauer*, 117 Cal.App.2d 400, 402-403 [256 P.2d 34]). He testified directly that this intention was expressed to his wife when the several deeds were taken. Thus it is not the "hidden intention not disclosed to the other grantee" which is ineffective to alter the character of the property from that expressed in the deed (*Gudelj* v. *Gudelj, supra*; *Socol* v. *King, supra*). ■ Whether the presumption arising from the form of the deeds has been rebutted is a question of fact (*DeBoer* v. *DeBoer*, 111 Cal.App.2d 500, 505 [244 P.2d 953]). ■ The trial court found that the several parcels were community property, and the evidence supports that finding.

■ We are aware that husband also testified that the funds used to purchase the lands were his separate property. As we have shown, this evidence was strongly impeached, and the trial court was not required to accept it. This, however, does not bar acceptance by that court of his testimony as to the intent of the parties in choosing the joint tenancy form of deeds. A court may believe a part of the testimony of a witness and reject parts of it (*Whitechat* v. *Guyette*, 19 Cal. 2d 428, 435 [122 P.2d 47]; *Lindemann* v. *San Joaquin Cotton Oil Co.*, 5 Cal.2d 480, 503-504 [55 P.2d 870]).

Husband contends that wife cannot assert the community character of the properties because she pleaded that they were held in joint tenancy or as tenants in common. But her pleadings were amended, by leave of court, to allege that the properties were in fact community. The issue of community character was fully and fairly tried, and the variance, even if uncured, would not be fatal (*Gudelj* v. *Gudelj, supra*, 41 Cal. 2d 202, 212).

The property settlement agreement, fairly construed, applies to all community real property of the parties (see *Taliaferro* v. *Taliaferro, supra*, 203 Cal.App.2d 642, 643, 644-645). The parcels here in issue were properly found to be community property, and thus within the agreement.

Husband cannot complain of the declaration of the rights

and duties of the parties under the agreement, since his pleadings requested it.

Judgments affirmed.

Salsman, J., and Devine, J., concurred.

Appellant's petitions for a hearing by the Supreme Court were denied August 7, 1963.