[Civ. No. 12156. Third Dist. Sept. 10, 1970.]

JAMES S. EDDY, Plaintiff and Appellant, v.
A. RUSSELL GALLAWAY, JR., et al., Defendants and Respondents.

## COUNSEL

James S. Eddy, in pro. per., for Plaintiff and Appellant.

Downey, Brand, Seymour & Rohwer and John F. Downey for Defendants and Respondents.

## OPINION

**JANES, J.**—Plaintiff appeals from a judgment entered in favor of defendant realtors under section 631.8 of the Code of Civil Procedure[1] after plaintiff had completed presentation of his evidence in a nonjury trial of his action for recovery of $10,000 paid under a land sale contract.

The evidence discloses the following relevant facts: In the spring of 1964, plaintiff (an experienced attorney) and Fred G. Buhler (a person of many years' experience in the mortgage business) entered into a partnership for the purchase and development of real property for student housing in the vicinity of Sacramento State College.

Raymond S. Cutter owned property bordering on the American River and adjacent to the college, and had listed 27 acres near the college for sale with defendant brokers, doing business as Wright and Kimbrough. On August 31, 1964, Cutter and Buhler (the latter acting for the partnership of Eddy and Buhler but not disclosing that fact) entered into a written "agreement of sale" drafted by Cutter's attorney wherein Cutter agreed to sell and Buhler agreed to buy 20 of those acres for $300,000. The written contract recited that the agreement was made "in consideration of the sum of $10,000.00 that Buyer has this day paid to Seller . . . ," that Cutter had received the $10,000 "on account of the purchase price . . . ," and that Buhler was to pay Cutter the remainder of the purchase price on or before November 1, 1964.

Using his own and plaintiff's money, Buhler paid the $10,000 to defend-

---

[1]Section 631.8 provides: "After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make findings as provided in Sections 632 and 634 of this code, or may decline to render any judgment until the close of all the evidence. Such motion may also be made and granted as to any counterclaim or cross-complaint.

"If the motion is granted, unless the court in its order for judgment otherwise specifies, such judgment operates as an adjudication upon the merits."

ants as Cutter's agents. Defendants deposited the money in their clients' trust account and, at Cutter's direction, applied it to the payment of a portion of their commission in June 1965 after the events herein described.

About November 1, 1964 (the due date), Buhler obtained from Cutter an oral extension of—as Buhler testified—"some more" time in which to complete payment. Cutter did not specify a new due date but agreed to Buhler's request for "a few more days, couple of weeks. . . ." Early in December 1964, Buhler sought and received from Cutter a second oral extension of "some more" time. At no time material to this action did plaintiff or Buhler ever pay or offer to pay the $290,000 balance, nor did Buhler have such an amount of money himself, nor did the two partners ever apply for a loan to complete payment.

In December 1964, after the second oral extension, Cutter arranged for Buhler to be introduced to one Warren Rovetch. At that time, Buhler was informed by Cutter and Rovetch that Rovetch wanted to buy Cutter's land and was negotiating with Cutter toward that end. In January 1965, plaintiff revealed his partnership interest to Rovetch. As plaintiff and Buhler testified, in January it was orally agreed among plaintiff, Buhler and Rovetch that the partners would assign their contract "position" to Rovetch and "get out of the way entirely." In return, Rovetch would pay them 4 percent of whatever price Rovetch paid Cutter. In addition, Rovetch was to reimburse them their $10,000 if they were able to obtain a third extension of time (in writing) or if Cutter agreed to credit Rovetch with the partners' $10,000 payment.

Later that same month (January 1965), at a meeting among plaintiff, Buhler, Rovetch, and Cutter's attorney (Mr. Boyles), plaintiff presented for consideration a proposed—but never executed—written sale agreement from Cutter to Rovetch, which plaintiff himself had drafted. At that meeting, plaintiff and Buhler told Cutter's attorney that they had an arrangement with Rovetch and that Rovetch would be buying the 20 acres. Rovetch indicated that he also wanted to buy the adjoining 7 acres owned by Cutter.

Cutter, however, would neither give Buhler another extension nor credit Rovetch with the $10,000 paid by Buhler. Buhler and Rovetch therefore orally agreed, and plaintiff was kept informed, that in exchange for an assignment to Rovetch of Buhler's rights, Rovetch would simply pay the 4 percent (and not an additional $10,000), but that the 4 percent would apply to the sales price to be paid by Rovetch for all 27 acres.

On March 31, 1965, Cutter and Rovetch signed a contract of sale covering the 27 acres for a purchase price of $330,320. Cutter's deed to Rovetch was recorded June 16, 1965. Buhler knew the deed was going on record

but, as hereinbefore stated, he never tendered the $290,000 which remained unpaid under his contract with Cutter. Cutter had never demanded such performance.

On June 16 (after the recording of the deed to Rovetch) at a meeting arranged by Cutter's attorney, Buhler dictated and Rovetch signed a promissory note for $13,200 which recited that the latter sum was "consideration for the acquisition of the option on said property originally held by Fred G. Buhler." In his conversations with Rovetch, Buhler had nearly always referred to the August 31st contract as an "option."

Subsequently, Buhler and plaintiff received the $13,200 from Rovetch; defendants refused plaintiff's demand for return of the $10,000; and, upon dissolution of their partnership, Buhler assigned his interest in the $10,000 to plaintiff for $5.00.

### Was the $10,000 Merely a Deposit or Was It Consideration for the Cutter-Buhler Contract?

Plaintiff's briefs repeatedly refer to the $10,000 as a "deposit," and he attacks the trial court's finding that the $10,000 was paid to Cutter by Buhler "as consideration" for the execution of the "Agreement of Sale" dated August 31, 1964.

Plaintiff's contention is without merit. A motion for judgment under section 631.8 requires the trial court to weigh the evidence and make findings. If the motion is granted, its findings must be upheld on appeal if supported by substantial evidence. (*U. S. Industries, Inc.* v. *Vadnais* (1969) 270 Cal.App.2d 520, 524 [76 Cal.Rptr. 44]; *Franco Western Oil Co.* v. *Fariss* (1968) 259 Cal.App.2d 325, 328-329 [66 Cal.Rptr. 458].)

Although the written contract described the $10,000 as having been "received . . . on account of the purchase price . . . ," the contract also stated that the agreements set forth in it were made "in consideration" of the payment of that sum by Buhler to Cutter. As heretofore shown, Buhler frequently referred to the August 31st document as an "option." On September 21, 1965, Buhler expressed to an official in the state Division of Real Estate his (Buhler's) opinion that, under the contract, he and plaintiff "were obligated to complete the purchase or lose everything that had been put into the deal." On the witness stand, Buhler testified as follows: "I was aware that I would certainly lose the 10,000, at least, if I didn't perform."

Cutter was not a witness. Buhler's statements, however, were substantial evidence that, even if the contract be deemed ambiguous, the seller and buyer intended to treat the $10,000 as if it were a payment made for an

option (although in its other aspects the contract was not an option). The trial court's finding was especially reasonable in view of the fact that, in exchange for the $10,000, the seller in effect was obligated to keep land worth $300,000 off the market for a minimum of two months.

### Was There a Rescission of the Cutter-Buhler Contract?

Plaintiff contends that the Cutter-Buhler contract of August 31, 1964, was still in force when Cutter executed his contract with Rovetch on March 31, 1965, and that Cutter must thereby be deemed to have consented to a rescission of the earlier agreement.

Plaintiff's theory flies in the face of the court's finding that any extension of time given to Buhler by Cutter "expired on or before January 31, 1965." This finding is supported by the above summarized evidence that neither of the oral extensions (the last early in December 1964) was intended to exceed "a few more days, couple of weeks. . . ." There was ample evidence (e.g., the partners' cooperation in the Cutter-Rovetch negotiations) to support the court's conclusion that the contract "was unilaterally abandoned and breached by Buhler and plaintiff when they failed to pay the purchase price . . . within the time prescribed in the contract or any extension thereof. . . ."

### Was the Interest of Plaintiff and Buhler in the $10,000 Transferred to Rovetch?

Plaintiff attacks the court's finding that "Buhler and plaintiff transferred to Rovetch all of the interest which they had in the property of Cutter, including all of their interest in the contract of August 31, 1964 *and in the consideration paid for said contract.*" (Italics ours.) From this finding the court concluded that plaintiff had no claim to the $10,000.

Both the finding and conclusion are supported by the record, but since the findings with which we have heretofore dealt are sufficient in themselves to support the judgment, it is unnecessary to discuss the sufficiency of the evidence to support the court's finding as to the effect of the assignment from the partners to Rovetch. (See *Colorado Corp.* v. *Smith* (1953) 121 Cal.App.2d 374, 377 [263 P.2d 79].) Nor are we persuaded by plaintiff's contention, in this connection, that Rovetch was an indispensable party to the action. The judgment entered does not purport to affect the rights of Rovetch in any manner; it determines nothing more than that plaintiff is not entitled to recover the $10,000.

### Was the Motion for Judgment Barred?

Plaintiff contends that the judgment entered under section 631.8 could not properly be rendered after defendants had themselves called and

examined a defense witness. The record discloses that Mr. Gallaway (one of the defendants), a busy defense witness, was called out of order—during the presentation of plaintiff's case—as a courtesy to counsel for the defendants and with the consent of plaintiff's counsel. The findings[2] based on his testimony may, however, as defendants suggest, be disregarded as surplusage immaterial to the issues of plaintiff's complaint without impairing the findings which support the judgment.

 Plaintiff also complains that the introduction of certain exhibits by defendants during cross-examination of plaintiff's witnesses amounted to an opening of defendants' case and barred their resort to section 631.8. Collaterally, plaintiff contends that such exhibits were improperly considered by the court in ruling on the motion.

In determining a motion under section 631.8, the trial court is commanded by that statute to "weigh the evidence. . . ." Cross-examination assists the court in that weighing process. (See *Payette* v. *Sterle* (1962) 202 Cal.App.2d 372, 375 [21 Cal.Rptr. 22].) "A cross-examiner may bring out all the facts within the knowledge of a witness involving things testified to on direct and which are material to a thorough understanding of the testimony, or to elicit any matter which may tend to overcome, qualify or explain the direct testimony." (*Behr* v. *County of Santa Cruz* (1959) 172 Cal.App.2d 697, 704 [342 P.2d 987].) Cross-examination has for its first utility the extraction of such remaining and qualifying circumstances. (*People* v. *Whitehead* (1952) 113 Cal.App.2d 43, 48-49 [247 P.2d 717].)

 The defense exhibits referred to by plaintiff were properly received in cross-examination of what plaintiff's witnesses testified to on direct. (See *Spitler* v. *Kaeding* (1901) 133 Cal. 500, 503-504 [65 P. 1040]; *Behr* v. *County of Santa Cruz, supra,* 172 Cal.App.2d at p. 704.) The court was therefore entitled to consider those exhibits when, in ruling on the motion, it weighed that testimony.

No other contentions of plaintiff require discussion.

The judgment is affirmed.

Pierce, P. J., and Mundt, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 5, 1970.

---

[2]The last two sentences of Finding No. 11 and all of Finding No. 12, concerning communications and commission arrangements between Cutter and defendant realtors.

*Assigned by the Chairman of the Judicial Council.