[Civ. No. 12809. Third Dist. June 23, 1972.]

BRYCE H. MILLER et al., Plaintiffs and Appellants, v.
JOHN A. DUSSAULT et al., Defendants and Respondents.

## COUNSEL

Clarence H. Pease and William H. Lally for Plaintiffs and Appellants.

Stone & Bach, John N. Bach, Williams, Van Hoesen & Brigham and Richard A. Williams for Defendants and Respondents.

## OPINION

**FRIEDMAN, Acting P. J.**—In the nonjury trial of this case plaintiffs rested, and defendants successfully moved for judgment under Code of Civil Procedure section 631.8.[1] Plaintiffs appeal from the judgment.[2]

The principal problem is that in passing upon the motion the trial court did not exclude from consideration several exhibits which the defense had placed in evidence as adjuncts to defendant's redirect testimony during his appearance as an adverse witness under Evidence Code section 776. Two of these exhibits sharply discredited the testimony of the two plaintiffs. The exhibits turned out to be rather crucial because, in granting the motion, the trial court found that plaintiffs had not told the truth. May exhibits supporting the defense and introduced during the plaintiff's case

---

[1]Code of Civil Procedure section 631.8, provides:

"After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make findings as provided in Sections 632 and 634 of this code, or may decline to render any judgment until the close of all evidence. Such motion may also be made and granted as to any cross-complaint.

"If the motion is granted, unless the court in its order for judgment otherwise specifies, such judgment operates as an adjudication upon the merits."

[2]At oral argument we raised the question whether the appeal was premature since, in pursuing their appeal, plaintiffs had taken no notice of the effect of a pending, undetermined cross-complaint. (6 Witkin, Cal. Procedure (2d ed. 1971) p. 4060.) On April 22, 1972, the cross-complaint was dismissed without prejudice. To avoid dismissal of the premature appeal, we shall order that the judgment be amended *nunc pro tunc* by including therein an order dismissing the cross-complaint without prejudice. (See *Carlson, Collins, Gordon & Bold* v. *Banducci*, 257 Cal.App.2d 212, 219, fn. 1 [64 Cal.Rptr. 915].)

in chief be weighed in the balance when the court determines the reliability of the plaintiff's evidence on a motion for judgment?

The action is primarily one for breach of contract. Plaintiffs Bryce Miller and Maxine Miller are husband and wife. Their basic claim is that defendant Capitol Trailer Sales, a corporation, and John Dussault, its president, engaged them for two years to manage a mobile home sales lot in West Sacramento; that they were to be paid salaries plus 50 percent of the gross profits; that they were given an option to buy the business at the end of the two years. Added to the breach of contract allegations of the complaint are counts for fraud and slander.

At the trial plaintiffs opened their case by calling John Dussault as an adverse witness under Evidence Code section 776. Dussault testified that on July 16 he met with the Millers and discussed their taking over as managers of the West Sacramento sales lot at salaries of $700 for Mrs. Miller in her role as bookkeeper and $500 for Mr. Miller as manager. He testified that there was no discussion relative to paying the Millers profits or commissions in addition to their salaries; that commissions were paid to salesmen working on the lot; that one previous manager had been paid a small percentage in addition to his $500 salary when he made a sale, but the arrangement with the two new managers was that each would receive a salary; that he did not promise either of the Millers commissions or profit percentages. According to Dussault, he had told plaintiffs that if the sales lot showed a profit at the end of six months the parties would then arrange a contract which would provide plaintiffs a 50 percent net profit split. He denied that he gave plaintiffs an option to purchase the sales lot.

Upon completion of Dussault's cross-examination, his own counsel had the prerogative of questioning him "as if under redirect examination." (Evid. Code, § 776, subd. (b).) His attorney exercised that prerogative. He not only examined his client orally, but requested that office copies of two letters be marked for identification. These were copies of typed letters apparently dictated by Dussault and mailed from his Anaheim office to plaintiffs in West Sacramento. One of the letters bore the date July 26, 1966 (shortly after the inception of the Millers' employment), the other bore the date November 21, 1966. Dussault testified that these were copies of letters written by him to plaintiffs. Plaintiffs objected that the letters were outside the scope of Dussault's examination under section 776. The objection was overruled and the copies were marked in evidence. During Dussault's "redirect" examination, his attorney also brought forward the original of another letter, this one bearing date of November 15, 1966, written by plaintiff Maxine Miller to Dussault. This letter was marked in

evidence as a defense exhibit. Dussault testified that his own letter of November 21, 1966, had been written in response to Mrs. Miller's letter of November 15.

Plaintiffs both testified to their joint employment to operate the West Sacramento sales lot for two years, commencing July 1966, at salaries totaling $1,200 per month plus 50 percent of the gross profit, with an option to buy the business at the end of the two years. Bryce Miller testified that upon concluding the oral arrangement the parties shook hands and Dussault said he would "reduce it to writing." Relative to Mr. Dussault's letter of July 26, 1966 (copy of which had been marked for identification), Mr. Miller testified that it was a "phony letter;" that plaintiffs had never received the original; that he, Miller, had never seen the letter until his deposition was taken.

Plaintiffs then produced other witnesses and introduced exhibits which bore upon plaintiffs' operation of the business, the accounting methods and the production of profits under plaintiffs' management. While voluminous in the extreme, this evidence had little or no bearing on the primary issue, which was the terms of plaintiffs' employment. As to the slander count, plaintiffs produced no evidence whatever to support their allegation that John Dussault had called them thieves.

In the course of direct and cross-examination of plaintiffs' witnesses, both sides placed in evidence a number of documents. Defendant offered in evidence the copies of Dussault's purported letters of July 26 and November 21, 1966. Plaintiffs objected that these were not the originals and that plaintiffs had never received the originals. The court overruled the objection on the theory that these were office copies sent in the ordinary course of business.[3] The July 26 letter confirmed that Dussault had hired the Millers on a straight salary basis and that if, after six months, the sales operation showed a net profit "we then will formulate a working agreement whereby you people will share in 50% of the new profits . . . ." In Maxine Miller's letter of November 15, 1966, she indicated an understanding that the Millers were entitled to 50 percent of the gross profits and an option to buy at the end of two years. Dussault's letter of November 21, 1966, was a sharp rejoinder, reiterating the Millers' employment on a straight salary basis but with the possibility of a profit-sharing arrangement if their work produced profit. Shortly after admission of the two

---

[3]Earlier, Dussault had testified that the office copy of his November 21, 1966, letter was in his office safe at Anaheim and would be brought to court by his secretary, Mrs. A. Lucy Tate. Obviously, if Mr. Dussault's statement were accepted, the copy marked in evidence could not be the office copy.

Dussault letters, plaintiffs rested. At that point defendants moved for judgment under section 631.8.

In arguing in support of the motion, the defense relied heavily on the two Dussault letters. In opposing the motion, plaintiffs argued that they had never received the two letters and that they had "a great deal more evidence" concerning these letters. Nevertheless, the trial court granted the motion, declaring that there was a square conflict between the testimony of Mr. and Mrs. Miller and that of Dussault; that the court did not believe either of the Millers. On appeal plaintiffs contend that the two letters were counterfeits, manufactured after inception of the lawsuit; that, by granting the motion for judgment, the trial court denied plaintiffs an opportunity for rebuttal evidence concerning the two letters; that under the circumstances the order for judgment was an abuse of discretion.

■ Enacted in 1961, section 631.8 provides a substitute for the nonsuit motion formerly available in nonjury trials. It permits either party to move for judgment at the close of the other's case. It authorizes the court to weigh the evidence and make findings. In weighing the evidence, the court may exercise the prerogatives of a fact trier by refusing to believe witnesses and by drawing conclusions at odds with expert opinion; if it grants the motion, its findings are not reversible if supported by substantial evidence. (*Trigg* v. *Smith,* 246 Cal.App.2d 510, 515 [54 Cal.Rptr. 858]; *Greening* v. *General Air-Conditioning Corp.,* 233 Cal.App.2d 545, 550 [43 Cal. Rptr. 662].)

California cases provide no ready answer to the question whether, in weighing a motion for judgment at the close of the plaintiff's case, the court may consider defense evidence brought in under Evidence Code section 776. The latter, of course, permits a party to call the adverse party as a witness and to examine him "as if under cross-examination," then permits his own counsel to examine him "as if under redirect examination."

In *Eddy* v. *Gallaway,* 11 Cal.App.3d 185, 192 [89 Cal.Rptr. 491], this court held that defense exhibits received during cross-examination for the purpose of impeaching the credibility of the plaintiff's witnesses could be considered in weighing a section 631.8 motion. *Eddy* v. *Gallaway* did not involve evidence adduced by the defendant under Evidence Code section 776.

■ In weighing motions for nonsuit or directed verdict in jury trials, a court may not consider evidence unfavorable to the plaintiff which has come in under Evidence Code section 776 during the course of the plaintiff's case. (*Smellie* v. *Southern Pacific Co.,* 212 Cal. 540, 559 [299 P.

529]; *Wilson* v. *County of Los Angeles,* 21 Cal.App.3d 308, 315 [98 Cal. Rptr. 525]; *Goggin* v. *Reliance Ins. Co.,* 200 Cal.App.2d 361, 364 [19 Cal.Rptr. 446]; Witkin, Cal. Evidence (2d ed. 1966) § 1193.) The limitation is usually ascribed to the court's lack of authority to weigh the plaintiff's evidence. (*Goggin* v. *Reliance Ins. Co., supra,* 200 Cal.App.2d at p. 364; see also *Crowe* v. *McBride,* 25 Cal.2d 318, 319 [153 P.2d 727]; *Leonard* v. *Watsonville Community Hosp.,* 47 Cal.2d 509, 523 [305 P.2d 36] (dissent).) In contrast, the motion for judgment under section 631.8 expands the trial judge's authority, allowing him to weigh the evidence and supplying a theoretical argument for his viewing all the evidence before him, regardless of its production by one side or the other.

The theoretical argument is overborne by opposing considerations. These considerations impel a rule which parallels that prevailing on nonsuit motions—a ban on consideration of evidence unfavorable to the plaintiff which has been admitted out of order under Evidence Code section 776.

Parties embark upon a trial relying upon the standard order of proof: presentation of plaintiff's case in chief, then presentation of the defense evidence, followed by an opportunity for rebuttal. (Code Civ. Proc., § § 607, 631.7.) Because the scope of rebuttal is controlled by the trial judge's discretion (Witkin, Cal. Evidence (2d ed. 1966) § 1097), the plaintiff recognizes that he may not safely put on a skeleton case, reserving important evidence for rebuttal; rather, that he should present his full array of evidence during his case in chief. (See Cal. Civil Procedure During Trial (Cont. Ed. Bar 1960) Trial, § 9.24, p. 218.)

In practice the statutory nonsuit motion in jury trials (Code Civ. Proc., § 581c) and the motion for judgment in nonjury trials (§ 631.8) occur at the close of the plaintiff's case. At that point the court has before it all, or at least the bulk, of the plaintiff's evidence. At that point, the central question is whether the plaintiff's evidence—exclusive of unfavorable defense proofs—establishes a prima facie case for recovery. Both procedures silently assume that the plaintiff's proofs, not the proofs on both sides, form the array of evidence to be measured against the challenge. It is the order of trial, not the presence or absence of power to weigh the evidence, which prescribes the content of that array.[4]

In practice, of course, there are variations upon the standard order of

---

[4]Section 631.8 does not literally confine itself to a motion by the defendant at the close of the plaintiff's case, but permits either party to move for judgment at the close of the other's case. Thus, in rare instances, a judge may have before him evidence on both sides of the case. In ordinary usage, nevertheless, the section is invoked by the defendant at the close of the plaintiff's case in chief, when the evidence before the court is primarily that of the plaintiff.

proof. Invoking section 776 of the Evidence Code, the plaintiff may call the defendant to the stand as an adverse witness; defense counsel may then examine his client "as if under redirect examination." Usage and practical convenience permit the defense to offer exhibits in evidence at that time, even though the plaintiff's case is still incomplete. Although received during plaintiff's case, evidence elicited from an adverse party under section 776 is not treated as the plaintiff's evidence. (*Leonard* v. *Watsonville Community Hosp., supra,* 47 Cal.2d at p. 516.) Quite aside from section 776, a party may be permitted to call a witness out of order as a matter of convenience. Consequently, when the plaintiff rests, the body of evidence before the court often comprises something other than the plaintiff's case pure and unsullied. It may include a heavy mixture of defensive matter. The point is that neither the nonsuit statute nor the motion for judgment statute makes allowance for this mixture. Both envision measurement of the plaintiff's evidence alone, even though by different yardsticks.

The defendant's appearance "out of order" as an adverse witness supplies the opportunity for a tactically conceived, highly selective presentation of defensive testimony and exhibits. The defendant may display the cream of his case, leaving the skim milk and curds in counsel's briefcase. If, when the plaintiff rests, the court is permitted to measure the reliability of his evidence against selected and incomplete segments of defensive proof, a number of disagreeable results occur:

First, value of the adverse witness procedure offered by section 776 will be diluted by the tactical dangers flowing from the piecemeal injection of defensive evidence.

Second, the relaxed and relatively informal introduction of defense exhibits during the plaintiff's case in chief will be replaced by wariness and tension, stimulating plaintiff's counsel to objections and involving the court in rulings—now unnecessary—confining the "redirect" strictly to the scope of the "cross."[5]

Third, when the judge considers the motion for judgment, his analysis will be inhibited by awareness that the plaintiff may yet be able to produce rebuttal, diminishing the probative force of the defense evidence injected during the plaintiff's case in chief.

Fourth, injection of unrebutted defense evidence into the weighing process will create discordance between the offer of rebuttal opportunity held out by section 607 and the denial of it implicit in section 631.8.

---

[5]The Law Revision Commission's comments accompanying Evidence Code section 776 point out that even though the adverse witness' examination by his own counsel proceeds as though it were on redirect examination, nevertheless, it is in fact cross-examination (Evid. Code, §761) and must be limited to the scope of the direct.

Fifth, on appeal the relatively clean-cut task of reviewing the order for judgment by the measure of the substantial evidence rule will be enmeshed in "abuse of discretion" arguments evoked by denial of the plaintiff's chance for rebuttal.

Although our present plaintiffs complain principally of the deprivation of rebuttal, that deprivation was a secondary injury. The primary injury stemmed from the inclusion of unfavorable defense exhibits in the array of evidence the court was weighing. Had the court considered plaintiffs' evidence alone, had the court disregarded the unfavorable Dussault letters elicited "out of order," the lack of opportunity to rebut the latter would have had no immediate consequence. We conclude that the trial court erred prejudicially by considering the two Dussault letters as part of the body of evidence before it on the motion for judgment.

■ A separate point of plaintiffs—that the court erred in setting aside a pretrial default taken against defendants—has no merit. The default was taken on extremely technical grounds, i.e., an allegedly invalid extension of time granted by the court. The record shows no lack of diligence, no disregard for judicial process on the part of defendants. The trial court would have abused its discretion had it refused to set aside the default.
■ Plaintiffs make much of the fact that the court informally recognized a motion in another form as one to set aside the default; that the court did not require defendants to support the motion with the formal papers enumerated in the third paragraph of section 473, Code of Civil Procedure. At this juncture plaintiffs ignore the opening provision of section 473, which confers broad equitable powers upon trial courts. If a motion attempts to set aside a default in some manner and it is not clear that it is made under section 473, it may be considered as though made under that section. (*Taliaferro* v. *Taliaferro*, 217 Cal.App.2d 211, 218-220 [31 Cal.Rptr. 690].) After reviewing the record we have concluded that the trial court did not abuse its discretion when it set aside the default and permitted defendants to answer.

The judgment is modified *nunc pro tunc* by including therein an order dismissing the cross-complaint without prejudice. The judgment for defendants on the slander count is affirmed. In all other respects, the judgment is reversed. Respondents will bear costs on appeal.

Regan, J., and White, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 16, 1972.

---

*Assigned by the Chairman of the Judicial Council.