[Civ. No. 48043. Second Dist., Div. Five. Feb. 7, 1977.]

WILLIE CHAPMAN HEAP, Plaintiff and Appellant, v.
GENERAL MOTORS CORPORATION, Defendant and Respondent.

COUNSEL

John J. Schimmenti for Plaintiff and Appellant.

Hillsinger & Costanzo, John J. Costanzo and Richard W. Tentler for Defendant and Respondent.

## OPINION

**ASHBY, J.**—In this personal injury action, plaintiff appeals from a judgment for defendant granted at the close of plaintiff's case on defendant's motion pursuant to Code of Civil Procedure section 631.8. The action was based on product liability.

On December 20, 1972, plaintiff was involved in a traffic accident while operating her 1966 Buick manufactured by defendant. She was driving northbound on the San Diego Freeway in the number four lane, preparing to exit at Wilshire Boulevard, when the car in front of her stopped suddenly. She applied her brakes and swerved into the number three lane to go around the stopped car, and was struck in the side by a truck. Prior to impact, her foot was on the brake. The impact caused her to be thrown around in the car. She was taken to the U.C.L.A. Medical Center in an ambulance. Her injuries included a severe cut and gouge to

the inner right ankle around the ankle bone. At the time of the accident, plaintiff, who was 72 years old, did not personally observe what cut her.

Two to three days later, plaintiff's husband examined and took photographs of the car at the place it had been towed, with particular attention to the accelerator pedal and the rod or "linkage" which the pedal operated. The pedal was moved away from the linkage when he found it.

George Kaden testified for plaintiff that he examined the accelerator pedal and the linkage which were removed from plaintiff's car, and the pedal and linkage on another Buick of the same year and model. Mr. Kaden had a bachelor's degree in aeronautical engineering, postgraduate work in electrical engineering, and a law degree. He observed that in a normal 1966 Buick the pedal is not actually attached to the linkage. He found it possible to move the pedal away from the linkage with his hand and move it down on the floor. The linkage rod is quite sharp and the "rivet heads, for want of a better term, that secure the wheels onto the rod are quite rough, too." The three wheels at the top of the linkage permit the pedal to "kick" it from different angles.

After examining the scar on plaintiff's ankle, Mr. Kaden was of the opinion that her ankle was injured when her foot hit the side of the pedal, pushing it away, and that her ankle came in contact with the linkage rod.

It was definitely possible to manufacture an accelerator pedal and linkage which did not come apart so as to create such danger. Mr. Kaden produced photographs of the accelerator and linkage on a 1962 Pontiac and a 1960 Rambler, both of which were made with the pedal connected to the linkage. In his opinion, had the Buick pedal been produced like the Pontiac or Rambler, the injury to plaintiff's ankle would not have occurred.

Mr. Kaden was not familiar with the standard of care in the automobile industry at the time of trial or in 1966. He had once worked on the design of an accelerator pedal linkage for an armored personnel carrier, which had to withstand driving over rough terrain. In Mr. Kaden's opinion, it was obvious that the unconnected parts could create a danger of coming apart in an accident and injuring someone, a problem which "almost screams for attention." He further stated:

"It's very difficult to say. But when it's apart like that, and you have got all that junk on the end of that rod for no particular reason, no real, to my way of thinking, valid reason, to have that type of mechanism—the end on the rod I would say that's—that's just not the way to do things in a correct engineering manner.

"Now, I don't care whether they're General Motors, or an alley shop. There is just no excuse. . . ." He also testified that newer model automobiles have a hanging gas pedal with "nothing underneath, nothing really to come apart in that thing; . . ."

The pertinent trial court findings of fact were:

"3. That said vehicle was not defective as a result of its design and manufacture of the accelerator pedal, its parts and immediately connected mechanisms.

"5. That defendant did not fail to provide reasonably safe devices to protect the operator of said vehicle from exposed moving and driving mechanisms of said vehicle.

"7. That the design and manufacture of the accelerator pedal, its parts and immediately connected mechanisms were not unreasonably dangerous for the intended use of the vehicle.

"8. That the design and manufacture of the accelerator pedal, its parts and immediately connected mechanisms were not unsafe for the intended use of the vehicle.

"9. That defendant did not fail to exercise ordinary care in the designing, manufacturing, and marketing of the accelerator pedal, its parts, and immediately connected mechanisms in the 1966 Buick automobile.

"10. That plaintiff was injured but not as a result of any defect in the design, manufacture, or assembly of said vehicle."[1]

---

[1] As originally prepared by defense counsel, finding No. 10 read: "10. That plaintiff was not hurt or injured as a result of any defect in the design, manufacture, or assembly of said vehicle."
The trial court modified it to read as quoted in the text.

DISCUSSION

■ A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. (*Vandermark* v. *Ford Motor Co.,* 61 Cal.2d 256, 260 [37 Cal.Rptr. 896, 391 P.2d 168]; *Elmore* v. *American Motors Corp.,* 70 Cal.2d 578, 583 [75 Cal.Rptr. 652, 451 P.2d 84].) The defect may be in design rather than in manufacture. (*Cronin* v. *J. B. E. Olson Corp.,* 8 Cal.3d 121, 134 [104 Cal.Rptr. 433, 501 P.2d 1153]; *Pike* v. *Frank G. Hough Co.,* 2 Cal.3d 465, 475 [85 Cal.Rptr. 629, 467 P.2d 229]; *Culpepper* v. *Volkswagen of America, Inc.,* 33 Cal.App.3d 510, 517 [109 Cal.Rptr. 110]; *Self* v. *General Motors Corp.,* 42 Cal.App.3d 1, 6 [116 Cal.Rptr. 575].)

Our Supreme Court has not formulated any precise definition of "defective" design, apparently preferring a case-by-case approach. (*Jiminez* v. *Sears, Roebuck & Co.,* 4 Cal.3d 379, 383-384 [93 Cal.Rptr. 769, 482 P.2d 681, 52 A.L.R.3d 92]; *Cronin* v. *J. B. E. Olson Corp., supra* at pp. 134-135 & fn. 16; *Buccery* v. *General Motors Corp.,* 60 Cal.App.3d 533, 543-547 [132 Cal.Rptr. 605]; cf. *Pike* v. *Frank G. Hough Co., supra* at p. 475; *Foglio* v. *Western Auto Supply,* 56 Cal.App.3d 470, 473-476 [128 Cal.Rptr. 545].) ■ Deviation from the industry norm is not necessarily the test. (*Jiminez* v. *Sears, Roebuck & Co., supra* at p. 383.) ■ Vehicle manufacturers must take accidents into consideration as reasonably foreseeable occurrences involving their products. (*Cronin* v. *J. B. E. Olson Corp., supra* at p. 126; *Horn* v. *General Motors Corp.,* 17 Cal.3d 359, 366 [131 Cal.Rptr. 78, 551 P.2d 398]. (There the horn cap on the steering wheel was held on by several sharp prongs sticking up from underneath. The cap was easily knocked off during an accident, and the driver was severely injured when she was thrown forward and her face struck the prongs. Affirming a judgment for the plaintiff, the court held the manufacturer strictly liable for this defect.))

■ The purpose of Code of Civil Procedure section 631.8 is to enable a trial court which, after weighing the evidence at the close of the plaintiff's case, is persuaded that the plaintiff has failed to sustain his burden of proof, to dispense with the need for the defendant to produce evidence. (*Columbia Engineering Co.* v. *Joiner,* 231 Cal.App.2d 837, 842 [42 Cal.Rptr. 241]; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, §§ 370-371, pp. 3164-3166.) ". . . In weighing the evidence, the trial judge may exercise the prerogatives of a fact trier by refusing to believe witnesses and by drawing conclusions at odds with expert opinion. If the

motion is granted, his findings are entitled to the same respect on appeal as any other findings and are not reversible if supported by substantial evidence. (*Woolliscroft* v. *Starr,* 225 Cal.App.2d 667, 669-670 [37 Cal.Rptr. 570]; *Estate of Sharff,* 219 Cal.App.2d 128, 132 [33 Cal.Rptr. 52].)" (*Greening* v. *General Air-Conditioning Corp.,* 233 Cal.App.2d 545, 550 [43 Cal.Rptr. 662]; see also *Franco Western Oil Co.* v. *Fariss,* 259 Cal.App.2d 325, 329 [66 Cal.Rptr. 458]; *Eddy* v. *Gallaway,* 11 Cal.App.3d 185, 190 [89 Cal.Rptr. 491]; *Slater* v. *Alpha Beta Acme Markets, Inc.,* 44 Cal.App.3d 274, 278 [118 Cal.Rptr. 561, 72 A.L.R.3d 1264]; *Rodriguez* v. *North American Rockwell Corp.,* 28 Cal.App.3d 441, 446-447 [104 Cal.Rptr. 678]; *Pinsker* v. *Pacific Coast Soc. of Orthodontists,* 1 Cal.3d 160, 167 [81 Cal.Rptr. 623, 460 P.2d 495]; *Columbia Engineering Co.* v. *Joiner, supra,* at p. 858.)

■ The crucial question before us is whether or not the findings made by the court are supported by substantial evidence. This is not a case where the trial court found that there was no evidence of injury to plaintiff or found the cause of that injury to be something other than that alleged by plaintiff. The trial court found that plaintiff was injured. Equally as important, it did not find that the injury was not caused by the accelerator rod.[2] The basic finding made by the trial court is that the accelerator was not defective in design, manufacture or assembly. Applying the substantial evidence rule, we find that the trial court's finding of no defect is not supported by substantial evidence.

The record discloses that the court based its findings and decision on its own observations and experiences which is clearly improper when it is contrary to the evidence introduced.[3] (*Noble* v. *Kertz & Sons Feed etc.*

[2]Although the court refused plaintiff's request on her motion for new trial for a specific finding that plaintiff was injured by the rod, a finding favorable to the defendant on that issue is not implied in the judgment. (Code Civ. Proc., § 634; *Leiter* v. *Eltinge,* 246 Cal.App.2d 306, 314 [54 Cal.Rptr. 703]; *Weisz Trucking Co.* v. *Emil R. Wohl Constr.,* 13 Cal.App.3d 256, 263 [91 Cal.Rptr. 489]; *San Bernardino Valley Water Dev. Co.* v. *San Bernardino Valley Mun. Water Dist.,* 236 Cal.App.2d 238, 267-268 [45 Cal.Rptr. 793].)

[3]The court said: "[W]e know there is such a thing as judicial knowledge, and I cannot ignore the fact that I know there are an awful lot of Buick Le Sabres on the road. I don't know how many thousands or tens of thousands; but, without getting into numbers, I know there are a lot of them. I can't ignore the fact that for the past eight years I have been driving an Oldsmobile that has a very similar type of accelerator. As far as I can see, it's identical, and I [*sic*] that there are thousands of those, and I know that they're operating.

"I know, for instance, that my accelerator for the past eight years has been the same type of thing here. Now, to hold that this is defective just doesn't make sense to me. It's operating in tens of thousands of automobiles without incident.

"Now, there is no—I'm assuming that everything is as you say it is from the mechanics

*Co.,* 72 Cal.App.2d 153 [164 P.2d 257],) In holding that the accelerator pedal in question was not defective, the court stated: ". . . Now, to hold that this is defective just doesn't make sense to me. It's operating in tens of thousands of automobiles without incident." This is not the test for determining a defective product. The mere fact that there are thousands of similar accelerator pedals in use does not make the one in plaintiff's car any less defective if it is poorly designed and can cause injury in an accident. Manufacturers must take accidents into consideration as reasonable foreseeable occurrences involving their products. (*Cronin* v. *J. B. E. Olson Corp., supra,* 8 Cal.3d 121, 126.)

The only evidence in the record was introduced by plaintiff. That evidence showed that the accelerator pedal was unconnected[4] to the linkage rod, that the pedal could be moved from side to side by hand, and that the rod thus exposed was sharp and rough, creating a danger to the driver if the pedal should be moved during an accident.

A review of the entire record reveals that the court granted the 631.8 motion on its own conception of what constituted a design defect, and ignored the prima facie evidence by plaintiff that established such a defect.

The court in *Greening* v. *General Air-Conditioning Corp., supra,* 233 Cal.App.2d 545, 550-551, stated that "[a]fter a successful defense motion under section 631.8, it is quite logical to draw findings in the terms of the absence of affirmative proof rather than the presence of negative proof. Proof of the latter sort usually awaits the defendant's case, and the very purpose of the motion is to eliminate the necessity of defense evidence. [¶] However logical at the trial court level, findings so drawn pose some difficulty on appeal. To find *substantial* evidence in support of a finding of *no* evidence draws the reviewing court into a kind of juridical shell game. There is a more palatable approach. . . . Where, as here, the trial

---

of the accident. Undue pressure because of the accident caused her foot to put pressure on the accelerator in a way that pushed the accelerator pedal to one side exposing the linkage, thereby causing the cut to her ankle. I'm accepting that as a premise in this case. But that doesn't mean that it was a defective design."

[4]Suppose that the linkage and pedal in this case had been connected, but by a defective piece of metal which could not withstand any force, and which had broken during the accident, exposing plaintiff's ankle to injury by the rod. Liability for the defective product in such a case would be obvious. (*Cronin* v. *J. B. E. Olson Corp., supra,* 8 Cal.3d at p. 126 (hasp, intended to prevent merchandise in the back of a truck from hitting the driver, broke because it was made of extremely porous metal full of holes, voids and cracks).) Defendant should not be in a better position because it failed to connect the pedal and linkage in the first place.

judge is directed by statute to weigh the evidence and make findings, . . . he may draw such inferences as seem reasonable to him. The following then becomes the appropriate rule on appeal: ' "When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court . . . ." ' (*Callahan* v. *Gray,* 44 Cal.2d 107, 111 [279 P.2d 963]; 3 Witkin, Cal. Procedure, Appeal, § 88, pp. 2251-2252.)" (Italics in original; see also *Trigg* v. *Smith,* 246 Cal.App.2d 510, 515 [54 Cal.Rptr. 858].)

In the instant case, the trial court's findings are framed in terms of the presence of negative proof. We find no reasonable inference which can be drawn from the evidence before the trial court which can support a finding that there was no defect in the design, manufacture or assembly of the accelerator mechanism. The findings are not supported by substantial evidence.

The judgment is reversed and the cause remanded for further proceedings consistent with the views expressed in this opinion.

Stephens, Acting P. J., and Hastings, J., concurred.